J-A18011-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| STACEY CARLITZ, EXECUTRIX OF THE ESTATE OF JACQUELINE D. CARLITZ, DECEASED AND ALAN S. CARLITZ | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| DELTA MEDIX, P.C. AND JEFFREY W. GUSE | |
| APPEAL OF: JEFFREY W. GUSE | No. 1370 MDA 2015 |

Appeal from the Order Entered July 15, 2015
In the Court of Common Pleas of Lackawanna County
Civil Division at No(s): 11-CV-1458

BEFORE: FORD ELLIOTT, P.J.E., BENDER, P.J.E. and STEVENS, P.J.E.*

DISSENTING MEMORANDUM BY BENDER, P.J.E.:    **FILED APRIL 04, 2017**

I disagree with two of the Majority's conclusions in this matter: 1) that Dr. Henzes' First Report did not mention, or otherwise suggest, a 'spontaneous fracture' theory; and 2) that "it should have been obvious to the defendants that they were to avoid any mention of the spontaneous fracture theory from Dr. Henzes' Second Report." Majority Memorandum at 39. Because I believe these conclusions were crucial to the Majority's decision to affirm the order granting a new trial to the plaintiffs, based upon the defendants' purported violations of the Court Order granting the motion *in limine*, I respectfully dissent.

The consequence of the Court Order was the preclusion any *new* theories not contained in the First Report. This much is not in dispute. With little analysis, however, the Majority concludes that "the spontaneous

*Former Justice specially assigned to the Superior Court.

fracture theory of causation was absent from the First Report." *Id.* at 37-38. To the contrary, I believe the First Report alluded to, or was at least ambiguous, regarding a spontaneous fracture causation theory. To be clear, the two causation theories in question are that: 1) Mrs. Carlitz fell after losing her balance while pivoting on her ankle, and she subsequently broke her ankle during the fall (non-spontaneous fracture theory); and 2) Mrs. Carlitz's ankle broke when she pivoted on it, causing her to fall (spontaneous fracture theory).

The Majority concedes that the First Report "referred to the mechanism of Mrs. Carlitz's injury as being due to the osteoporotic state of her bones." *Id.* at 38. The Majority goes on to state that the First Report only described the non-spontaneous fracture theory, and that a spontaneous fracture theory was a "*completely new* theory of causation." *Id.* (emphasis added). However, if the mechanism of Mrs. Carlitz's injury was the osteoporotic state of her bones, how is that not congruent with a spontaneous fracture theory? Does it not, in fact, implicitly suggest a spontaneous fracture theory? Is there a fundamental difference between the "cause" and "mechanism" of injury in this case? Is it merely the difference between a general and specific cause?[1] The Majority does not answer these critical questions.

_____

[1] To illustrate this difference, a doctor might describe the mechanism of injury resulting from a fall as 'blunt force trauma.' Such a fall could result
*(Footnote Continued Next Page)*

In my view, the First Report describes a general cause – that the osteoporotic state of Mrs. Carlitz's ankle caused it to fracture in circumstances when a healthy bone would not. That Dr. Henzes only went on to describe the non-spontaneous fracture theory does not mean that his description of the mechanism of her injury did not also encompass a spontaneous fracture theory. Dr. Henzes was not an eyewitness to Mrs. Carlitz's injury. He could not know the *specific* cause of it, he could only speak to the *general* mechanism of that injury, and any suggestion of specific causes were, therefore, merely hypotheticals. Accordingly, I reject the Majority's conclusion that the First Report did not, at least to some degree, suggest a spontaneous fracture theory, because it appears to me to be inherently encompassed within Dr. Henzes' description of the mechanism of injury.

Second, I do not believe the trial court effectively or sufficiently conveyed to the defendants that the spontaneous fracture theory was specifically precluded by the court's granting of the plaintiffs' motion *in limine*. As the Majority acknowledges, at the time the trial court issued the

*(Footnote Continued)* ————————————

from an accident, foul play, or suicide. If our doctor's first expert report suggested either an accident or foul play as examples of potential specific causes of the blunt force trauma he observed, but he fails to suggest suicide in that report, would his mention of suicide in a subsequent report be a *completely new* causation theory? I think not, because the difference is not a difference in kind (all are subsumed in the general cause, blunt force trauma).

Court Order, "it appears that the trial court was more concerned with the untimeliness of the Second Report[,]" than with whether the defendants could raise the spontaneous fracture theory through Dr. Henzes' testimony. Majority Memorandum at 37. Indeed, while the trial court clearly ruled that the defendants could not reference the *language* contained in the Second Report, it provided virtually no guidance of the practical ramifications of that decision, such as whether the spontaneous fracture theory was actually contained within the four corners of First Report. The court's omission and/or oversight in this regard occurred despite the specific, contemporaneous arguments by the parties regarding that issue at the time the motion *in limine* was litigated. The trial court did agree with the plaintiffs that *if* the Second Report presented a new theory of causation, that new theory would also be precluded under the Court Order. However, it is obvious from the trial court's accompanying statement that the trial court had not determined whether the Second Report had, in fact, presented a new theory of causation. Instead, the trial court stated:

> They have their theory as to what Dr. Henzes' initial report means and you have yours. And if, in fact, his supplemental report is a clarification, then it's not adding anything new, go with the original report. So, the motion *in limine* on April 21st is granted. Okay? I don't necessarily think it has anything to do with it. I don't necessarily think the jury is going to conclude what you guys conclude. But nevertheless, I thought we needed to address it because it was outstanding.

N.T., 4/27/15, at 33-34.

Clearly, the trial court did not advise the defendants that a spontaneous fracture theory was precluded, or relatedly decide whether the Second Report was merely an elaboration on the theory presented in the First Report. Yet, the court was clearly aware of that dispute between the parties, and the trial court's language, quoted *supra*, even suggests to me the court's inexplicable intention to leave the matter for the jury to resolve, an impression ultimately justified by the court's later discussion of the issue.

When the trial court addressed the plaintiffs' objection to defendant Guse's counsel's opening statement, the first of the purported violations of the Court Order, the court again appears to have sidestepped the essence of the matter. In response to the objection, the court stated:

> Well, I'm going to deny the motion for two reasons. I have already told the jury what the lawyers say cannot be equated as evidence, so your argument isn't evidence, and [] I told the jury that they can't decide the case based upon anything I say or what the lawyers say, but they are to decide it based on the evidence. I would make certain that you handle that very carefully, however, when you bring in Dr. Henzes.

N.T., 4/28/15, at 60.

Thus, the trial court yet again failed to resolve the dispute at its second opportunity to do so. Indeed, the court's continued ambiguity could be reasonably interpreted, given its prior statement on the matter, as having suggested to the defendants that the spontaneous fracture theory was still potentially admissible if they demonstrated to the jury that it emanated from the First Report.

Given the record as it stood when the plaintiffs objected to Guse's counsel's opening statement, I simply cannot conclude that Guse's counsel violated the Court Order at that time. Indeed, by first suggesting that it was a matter for the jury, and then by failing to explicitly instruct the defendants that the spontaneous fracture theory was excluded in response to this objection, the trial court essentially invited the defendants to continue to press the issue.

The trial court also determined that the Court Order was violated by the defense during the direct examination of Dr. Henzes. Immediately prior to Dr. Henzes' testimony, Guse's counsel asked the trial court to clarify what Dr. Henzes was permitted to say in light of the court's precluding the admission of the Second Report. N.T., 4/29/15, at 48. The court responded that Dr. Henzes could testify as to whatever was within the "fair scope of his first report[,]" and then asked, "[w]hy is that a problem?" *Id.* Counsel responded: "I don't think it's a problem, I think it's clear what he said, but I think [Plaintiff's counsel], you know, has said that it's something different." *Id.*

Clearly, Guse's counsel was indicating to the court that it had not been specific enough in its prior ruling regarding whether the Second Report actually contained a wholly separate theory of causation not present in the First Report. The court responded: "Let me be more specific, the phraseology that he used in describing … how this wound might have occurred has to be that phraseology from his [first] report and not his

second report." *Id.* at 49. This was only marginally more specific than the prior instructions by the court, and still did not resolve the lingering question.

Subsequently, during direct examination, Dr. Henzes was asked: "[C]an you please tell the jury what your opinion is as to the causation issues in this matter?" *Id.* at 58. Dr. Henzes responded, "That her osteoporosis led her to having a low level trauma causing her to break her ankle." *Id.* at 58-59. No objection was made to this testimony. Subsequently, Dr. Henzes was asked, "And what's your understanding as to the interaction between Mr. Guse and Jacqueline Carlitz and Alan Carlitz once they arrived at Delta Medix?" *Id.* at 60. Dr. Henzes then stated:

> Well, Mr. Guse was the ultrasound tech. [Ms. Carlitz] was brought to Delta Medix. And she was brought in a van. She was in a wheelchair. And the wheelchair, Mr. Carlitz, I believe, pushed the wheelchair into the building. And Mr. Guse took over and took her right into the exam room. He asked her if she could get out of the wheelchair to get up on the exam table. She said she could. She was able to get herself out of the chair. With the help of Mr. Guse and Mr. Carlitz, she got up on to the step that she needed to get onto to get onto the exam table. And then, as she was pivoting herself around, she either—one of two things either happened. Either she lost her balance and fell and broke her ankle. Or as she was pivoting, the pivot maneuver would have broken her ankle and then she would have collapsed and fallen onto the floor.

*Id.* At this point, the plaintiffs' counsel objected.

A discussion was then held at sidebar, where the plaintiffs' counsel complained that Dr. Henzes' report did not mention the pivoting as the cause of the broken ankle (the spontaneous fracture theory). *Id.* at 61.

Guse's counsel responded that the report did mention pivoting. ***Id.*** However, although the plaintiffs' counsel agreed that the first report indicated that Ms. Carlitz had pivoted on her ankle, he argued the report had stated that she had "[p]ivot[ed] and attempt[ed] to do it, but [the first report did not] list that as the cause. And he's talking about causation here. The cause that it states here [in the first report] is that she lost her balance and fell." ***Id.***

A protracted discussion ensued, during which the court appeared to carefully consider, *for the first time*, whether Dr. Henzes' initial report actually referenced the spontaneous fracture theory, or whether it only suggested that osteoporosis had contributed to Ms. Carlitz's injury *after* she lost her balance and fell, the non-spontaneous fracture theory. ***Id.*** at 61-71. In the middle of that discussion, the court stated: "Now, let's assume for purposes of discussion that I were to favorably entertain [the plaintiffs' argument that Dr. Henzes' in-court statement went outside the scope of the first report], the horse is out of the barn, how do I correct it?" ***Id.*** at 65. In response to this, the plaintiffs' counsel indicated that a mistrial was the only possible remedy, as they had not obtained an expert to rebut the spontaneous fracture theory. ***Id.*** at 66-67. Alternatively, the plaintiffs' counsel argued that the court needed to "strike that testimony from the record and tell the jury that there's no evidentiary basis for what the doctor just said[.]" ***Id.*** at 67.

More discussion ensued, with the trial court ultimately concluding that it would deny the motion for a mistrial, read portions of the first report to the jury, "and do a curative [instruction] and say, there was no alternative theory." *Id.* at 71. I believe this was the first indication that the trial court expressed any intent to exclude the spontaneous fracture theory under the Court Order.

However, the court's subsequent actions immediately contradicted what initially appeared to be a decision to preclude the spontaneous fracture theory. First, the court did not order the objected-to testimony of Dr. Henzes to be stricken from the record as the plaintiffs' counsel requested. Second, the instruction given appeared to have reinforced the notion that the spontaneous fracture theory was a factual matter for the jury to decide (and not, therefore, specifically precluded by the Court Order). For instance, the court instructed the jury as follows:

> Ladies and Gentleman of the jury, I want to talk to you a little about the objection and sidebar we just had. In the report that is authored by Dr. Henzes dated August 19th, 2014--and I'll let you know what I'm reading from, doctor, so you can read along with me. On Page 2, second paragraph where it starts, "The mechanism of," do you see where I'm talking about? "The mechanism of the patient's injury."
>
> ...
>
> Okay, now, there's an issue as to whether we're talking about causation. In other words, the dispute being, did she fall and the leg broke ... so the fall would have been the cause of it? And the mechanism was--I'm going to read to you what he says in the report, okay? And then, I'm going to talk to you a little bit about how it works. Because when you get a verdict slip in this case, the first question is going to be; "Do you find that the

defendant was negligent or did you find that the defendant violated the standard of care?" That's why they're talking about the standard of care here. A violation of the standard of care is negligence in Pennsylvania. And then, the next one would be, "Did the violation cause the injury?" Okay, was the person harmed, is their factual cause of harm from that violation of standard of care? And I think one of the lawyers made reference to it in the opening. You can run a red light and not hit anything and nobody hits you and you were negligent but you got away with it because there was no damage, no harm, okay? Well, in this particular case, the alternative theories that the doctor just talked about don't necessarily reflect the wording in his report. So I want to read to you the specific wording in Dr. Henzes' report and kind of we're going to hold him to that, okay? And this was what the report says.

…

But here's what I want you to understand. The report says, "The mechanism of the patient's injury would be due to the osteoporotic state of her bones." Now, you have to determine what that means, okay? It might mean, if you fell, you wouldn't have broken your bones because you're not an osteoporotic. But that's what he says. Then, it says, "The pivoting that she was attempting to do would be very similar to what she would do each day getting in and out of bed and into her wheelchair to participate in the activities at the nursing home. The only difference would be the stool that she would step up onto to sit on the exam table. The records reflect that Mr. Guse was attempting her--" I'm sorry, "her balance and fell. It does not appear that at any time she tried to navigate onto the stool herself." That's the testimony that the doctor, any expert that generates a report is held to the fair scope of the four corners of the document. So that's what you need to digest as far as the testimony of Dr. Henzes is concerned.

*Id.* at 71-75.

Nowhere in the trial court's rather confusing instruction did the court directly indicate that the jury must ignore or disregard the spontaneous fracture theory. Instead, the court appears to have again construed the question as a factual matter to be resolved by the jury. While the jury was

- 10 -

instructed to hold Dr. Henzes to the four corners of the admitted First Report, the court also told the jury that "the alternative theories that the doctor just talked about don't *necessarily* reflect the wording in his report." *Id.* at 73 (emphasis added). This instruction, therefore, dovetails closely with the comments the court made in granting the motion *in limine*, and not with the plaintiffs' argument that the spontaneous fracture theory was barred as a matter of law pursuant to the Court Order. *See* N.T., 4/27/15, at 33-34 ("They have their theory as to what Dr. Henzes' initial report means and you have yours. And if, in fact, his supplemental report is a clarification, then it's not adding anything new, go with the original report. So, the motion *in limine* on April 21st is granted. Okay? I don't necessarily think it has anything to do with it. I don't necessarily think the jury is going to conclude what you guys conclude.").

The trial court indicates that the third (and last) purported violation of the Court Order occurred when, during redirect examination, Guse's counsel asked Dr. Henzes, "[the plaintiffs' counsel] asked you questions about lost balance and falling. Now, you had mentioned in your report initially the twisting?" N.T., 4/29/15, at 114. Dr. Henzes answered, "[y]es." *Id.* Counsel then asked him, "[n]ow, can a patient have a break and then a fall?" *Id.* Dr. Henzes answered, again, "[y]es." *Id.* The plaintiffs' counsel objected, and the trial court stated: "Sustained. You're going on the area that we already covered and it's in the new report. It's not allowed.

Disregard that testimony. That was a conceptual question about the patient generally and not the patient in this case." ***Id.***

I believe this was the first time that the trial court adequately and sufficiently conveyed to the defendants that the spontaneous fracture theory was being barred premised on the Court Order's exclusion of any *new theories* contained in the Second Report, and the first time that the court clearly indicated that the matter was not going to be resolved by the jury. As no subsequent violations of the Court Order (so defined) occurred, I would conclude, contrary to the Majority, that the trial court abused its discretion by granting a new trial premised on these purported violations of the Court Order.

I respectfully dissent.